**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED TRANSPORTATION UNION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 05-CV-695-GKF-FHM |
| UNION PACIFIC R.R. CO., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BROTHERHOOD OF LOCOMOTIVE | ) | |
| ENGINEERS AND TRAINMEN, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter comes before the court on the Motion for Summary Judgment filed by plaintiff United Transportation Union ("UTU") [Dkt. # 28], and the Motion for Summary Judgment filed by defendant Brotherhood of Locomotive Engineers and Trainmen ("BLET") [Dkt. # 30]. For the reasons stated below, BLET's motion is granted and UTU's motion is denied.

### Background

The following material facts are undisputed. For the purposes of the Railway Labor Act, ("RLA"), UTU is the duly authorized representative of the craft or classes of "train service employees" employed at the Union Pacific Railroad Company ("UP"). UTU and UP are parties to various collective bargaining agreements ("CBAs") covering those employees. BLET is the duly authorized representative of the craft or classes of "engineers" employed at UP. BLET and UP are parties to various CBAs covering those particular employees.

At the time of the events precipitating this suit, UP Conductor E. S. Cullen ("Cullen") was a member of BLET, but was working in a craft (conductor) represented by UTU. This situation is permitted under the RLA.[1]

On February 18, 2004, Cullen reported for duty and received his train's work orders, which showed that there were ten (10) rail cars to be delivered to the Sand Springs Railway. Cullen contacted the Superintendent of the Railway and reached mutual agreement the cars would not be delivered that day. Cullen failed to inform UP management that he would not be delivering the cars as directed by the work order. After a formal investigation, UP assessed him with Level 1 discipline for a violation of a company rule requiring compliance with instructions from supervisors. However, since Cullen's existing level of discipline was at Level 3, UP's progressive discipline policy raised Cullen's discipline level to Level 4. Level 4 discipline carries a thirty-day suspension without pay, a requirement that the employee take and pass an operating rules exam in order to return to work, and the implementation of a corrective action plan upon return to work.

Cullen filed a claim challenging the disciplinary action. Although Cullen was a conductor, BLET represented him in the arbitration. BLET and UP arbitrated the matter before Public Law Board 6833 (the "PLB"). UTU neither participated in, nor received notice of, that proceeding.

The PLB sustained Cullen's claim in an Award issued May 16, 2005. The PLB found that UP's previous verbal instructions – to make daily deliveries to short line carriers and to inform management when such a delivery would not be made – were issued during a conversation involving

---

[1] The RLA, at 45 U.S.C. § 152 Eleventh(c), permits an employee in "engine, train, yard, or hosstling service" to satisfy his or her union shop requirement by belonging to any one of the labor organizations that are national in scope and that admit to membership employees in any of such services. This allows employees who move between crafts or classes of train and engine services to do so without changing unions.

a particular short line carrier, the Tulsa Sapulpa Union Railroad.  The Board found that the verbal instructions "could easily have been misunderstood" to involve only the Tulsa Sapulpa Union Railroad and not *all* short line carriers (including the Sand Springs Railway).  The PLB concluded that UP "must share the blame for failure to comply with [verbal] instructions when instructions are unclear," and that "the penalty extracted was too harsh."  The Award rejected the discipline and rescinded Cullen's discipline level upgrade.  *See* BLET's Statement of Uncontested Material Facts, No. 8, Dkt. #31, p. 4.

UTU subsequently filed this action to set aside the Award.  UTU contends it was entitled under the RLA to notice and the right to participate in the proceeding.

### Discussion

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "When applying this standard, [the court] must view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005). "The nonmoving party 'must identify sufficient evidence which would require submission of the case to a jury.' Where the nonmoving party bears the burden of proof at trial, that party must go beyond the pleadings and identify specific facts that demonstrate the existence of an issue to be tried by the jury." *Jencks v. Modern Woodmen of America*, 479 F.3d 1261, 1264 (10th Cir. 2007) (internal citations omitted).  To survive a motion for summary judgment, the nonmovant "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).

A decision of a Public Law Board may be appealed to a federal district court under only three limited circumstances:  (1) when the Board fails to comply with the requirements of the Railway Labor Act, (2) when the Board acts beyond its jurisdiction, and (3) when there is fraud or corruption by one of the Board members.  *Watts v. Union Pac. R.R. Co.*, 796 F.2d 1240, 1243 (10th Cir. 1986) (citing 45 U.S.C. § 153 First (q)).  The issue presented here is whether the PLB failed to comply with the provisions of the RLA.

UTU argues that the Award must be set aside because the UTU had a right to notice of the arbitration and a right to be heard.  UTU also contends that its duty as a majority union requires its presence in arbitration proceedings involving a craft it represents, even when a minority union represents the claimant.

A Public Law Board "shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes submitted to them."  45 U.S.C. § 153 First (j).[2]  An employee or carrier is "involved" for the purposes of § 153 First (j) when that employee or carrier would be adversely affected by the board's decision.  *See Steward v. Mann,* 351 F.3d 1338, 1345 (11th Cir. 2003); *Bhd. of Maint. of Way Employees v. St. Johnsbury & Lamoille County R.R.*, 794 F.2d 816, 818 (2nd Cir. 1986); *Hunter v. Atchison, T. & S.F. Ry. Co.*, 188 F.2d 294, 300-01 (7th Cir. 1951)*; Estes v. Union Terminal* Co., 89 F.2d 768, 770 (5th Cir. 1937).

Upon review of the briefs, the Court concludes that UTU has failed to show that the arbitration either could have adversely affected, or did adversely affect, UTU.  UTU argues that it

---

[2] Public Law Boards authorized by 45 U.S.C. § 153 Second serve as private alternative forums to the National Railroad Adjustment Board and must conform to the same procedural constraints imposed on the Adjustment Board by § 153 First.  *Bhd. of Ry., Airline, and Steamship Clerks v. St. Louis Southwestern Ry.*, 676 F.2d 132, 135 n.2 (5th Cir. 1982).

4

was "injured in fact here" [Response, Dkt. #37, p.9], because BLET did not raise a challenge to UP's imposition of its progressive discipline policy as improper under the terms of the existing CBA. UTU had previously raised the issue in an earlier case heard by PLB No. 5170 [Dkt. #37-2], but that board rejected UTU's argument.  In this case, PLB 6833 rejected the discipline and rescinded the discipline level upgrade, so UTU was not adversely affected by the lack of a challenge to progressive discipline.  In addition, UTU was not entitled to notice because there was nothing to cause a  reasonable person to believe that UTU or its members could be adversely affected by the result of the hearing.  BLET's submission to PLB 6833 presented a simple, direct challenge to the discipline imposed on Cullen – that the transcript of the investigation failed to support discipline, that the facts failed to show Cullen guilty of violating any of UP's General Code of Operating Rules, and that UP has failed to show Cullen had been instructed to contact a UP manager if the cars were not to be delivered to the Sand Springs Railway.  In view of the facts presented here, this Court rejects UTU's contention that the board's decision could have undermined UTU's collective bargaining agreement.[3]  *See United Transportation Union v. Brotherhood of Locomotive Engineers and Trainmen*, 2007 WL 2002506 (M.D. Fla. 2007) (Since UTU failed to show how arbitration could have or did adversely affect UTU's collective bargaining agreement, it was not an "involved party" under the RLA).

---

[3] Courts generally refuse to rule on the precedential effect of an arbitration award, taking the position that the question is properly resolved through arbitration.  *Intern. Bhd. Of Elec. Wkrs. v. United Tel. Co.*, 738 F.2d 1564, 1571 (11th Cir. 1984).  Thus, any issue arising regarding the precedential effect of the PLB 6833 arbitration award would be for subsequent arbitrators. BLET's claim filed on Cullen's behalf did not raise issues regarding the UTU-UP collective bargaining agreement, nor did the Award address or resolve any such issues.  In that light, it is difficult to conceive that the Award could have an adverse precedential effect UTU's collective bargaining agreement.

UTU contends it was inherently involved in the dispute because Cullen was working in a position covered by a UTU-UP agreement at the time of the events underlying the arbitration. This Court disagrees. Again, UTU has failed to show how it was actually involved in the dispute, or how the Award interpreted the UTU-UP agreement.

UTU argues that the Tenth Circuit's decision in *Brotherhood of Locomotive Engineers v. Denver & Rio Grande Western Railroad Company*, 411 F.2d 1115 (10th Cir. 1969)[4], when read in conjunction with the district court decision it affirmed – *Brotherhood of Locomotive Engineers v. Denver & Rio Grande Western Railroad Company.*, 290 F.Supp. 612 (D. Colo. 1968) – suggests that notice should be given to the certified representative when a minority union handles an arbitration involving the majority union's collective bargaining agreement. In this case, however, the dispute did not involve a provision in UTU's collective bargaining agreement which required UTU's interpretation. Moreover, the district court in *Denver & Rio Grande Western Railroad* did not hold that any such notice must or should be given. Rather, the court merely noted that the majority union's *alleged* rights were fully protected in that case because the agreement establishing the Board contained a provision whereby the majority union was entitled to render an interpretation of the collective bargaining agreement *if* the dispute required such an interpretation. The dispute before PLB 6833 did not require such an interpretation.

Finally, UTU cites no authority for the proposition that a member who chooses to be represented by a minority union in arbitration may subsequently claim the certified representative

---

[4] In his opinion for the Tenth Circuit, Judge Murrah agreed with District Judge Arraj's conclusion that the RLA does not restrict the availability of the National Railroad Adjument Board grievance machinery to the collective bargaining representative alone, but permits representation by any otherwise qualified union representative. *BLET v. Denver & Rio Grande Western R.R. Co.*, 411 F.2d at 1118.

breached its duty of fair representation.  The caselaw suggests the contrary, as a union breaches its statutory duty of fair representation only when its conduct toward a covered employee is arbitrary, discriminatory, or in bad faith.  *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991); *Vaca v. Sipes*, 386 U.S. 171, 190 (1967); *James v. Int'l Bhd. of Locomotive Eng'rs*, 302 F.3d 1139, 1145 (10th Cir. 2002).

There are no material facts in dispute.  UTU was not entitled to notice and opportunity to be heard in the arbitration. Defendant Brotherhood of Locomotive Engineers and Trainmen is entitled to judgment in its favor.

WHEREFORE,  the Motion for Summary Judgment filed by plaintiff United Transportation Union [Dkt. # 28] is denied, and the Motion for Summary Judgment filed by defendant Brotherhood of Locomotive Engineers and Trainmen [Dkt. # 30] is granted.

IT IS SO ORDERED this 1st day of October 2008.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma